OPINION
{¶ 1} Defendant-appellant Keith Sulek appeals from his conviction and sentence, following a no-contest plea, upon two counts of Aggravated Vehicular Assault as felonies of the second degree, two counts of Aggravated Vehicular Assault as felonies of the third degree, two counts of Endangering Children as felonies of the third degree, and one count of Endangering Children as a felony of the fourth degree. Sulek contends that the trial court erred when it denied his motion to withdraw his plea, made before sentencing. He also contends that his trial counsel was ineffective for having failed to explain to him the consequences of the fact that some of the counts would merge sufficiently in advance of the plea hearing to afford him more opportunity to consider those consequences.
 {¶ 2} We conclude that the trial court, which held a hearing on the motion to withdraw the plea, did not abuse its discretion in denying the hearing. The motion was predicated upon Sulek's contention that he had not been apprised of the merger consequences sufficiently in advance of the plea hearing, but at the plea hearing, when he was asked by the trial judge if he knew the maximum penalty, Sulek readily answered "17 and a half years." Sulek never expressed any confusion in that regard, nor did he indicate that he needed more time to consider his decision to plead no contest, in view of his revised understanding of the maximum penalty involved. Similarly, we conclude that this record fails to portray that Sulek was prejudiced by any failure of his trial counsel, before the plea hearing, to have advised him correctly concerning the maximum penalty involved. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} The facts giving rise to this litigation are eloquently stated by the trial court in its explanation of its sentencing decision, and these facts do not appear to be in dispute. As stated by the trial court, the facts are as follows:
 {¶ 4} "The facts of this case, Mr. Sulek, are that you got behind the wheel of a car with cocaine in your system, with a .08 alcohol level, and under circumstances in which you were not allowed to be driving. You were under a suspension at that time.
 {¶ 5} "In that condition and those circumstances you took your three children, placed them in the motor vehicle and went for a drive. You lost control of your vehicle, and as a result of that crash, two of your children were ejected from the vehicle, * * * and * * *, who received significant critical injuries.
 {¶ 6} "Your son was not ejected, but was visibly shaken and incoherent as a result of what had just happened. The injuries to your children included road rash, a broken hip, bilateral pubic fractures, a left sacroiliac fracture of the sacrum, and this is to * * *.
 {¶ 7} "To * * *, she suffered a spleen laceration, surrounding hemotoma, a bilateral pulmonary contusion, a forehead laceration, a left midshaft displaced femur fracture; multiple abrasions, bilateral pubic ramee fractures, and left sacroiliac joint separation.
 {¶ 8} "And as these children are laying out there with these injuries, the Officer notes that while there was gasoline being emitted from the vehicle and the children were laying there who had to be — one child had to be removed from that location by bystanders, not you. You started smoking a cigarette and had to be advised by the Officer not to do that.
 {¶ 9} * * *
 {¶ 10} "There was some indication that perhaps these children, while in critical conditions, you did not give the Police and medical authority an immediate indication that they could be removed and it took a Paramedic Chief to order that these children be removed from the scene without your consent. * * *"
 {¶ 11} Sulek was charged by indictment with two counts of second-degree-felony Aggravated Vehicular Assault, two counts of third-degree-felony Aggravated Vehicular Assault, two counts of third-degree-felony Endangering Children, and one count of fourth-degree-felony Endangering Children. After various proceedings, including a motion to suppress, Sulek appeared with his attorney and tendered a plea of no contest to all of the charges. His plea was accepted, and he was found guilty as charged. A dispositional hearing was scheduled.
 {¶ 12} Shortly before the dispositional hearing, Sulek moved to withdraw his plea. At the hearing set for disposition, the trial court first heard Sulek's motion to withdraw his plea, and overruled it. The trial court then heard from the parties on the issue of sentencing. The hearing concluded with the trial court imposing sentences of six years on each of the second-degree-felony Aggravated Vehicular Assault counts, and one year on the fourth-degree-felony Endangering Children count, to be served consecutively for a total sentence of thirteen years. The remaining counts were merged with the two second-degree-felony Aggravated Vehicular Assault counts, as allied offenses.
 {¶ 13} From his conviction and sentence, Sulek appeals.
 II {¶ 14} Sulek's First Assignment of Error is as follows:
 {¶ 15} "THE TRIAL COURT ERRED BY NOT PERMITTING APPELLANT TO WITHDRAW HIS PLEA OF NO CONTEST."
 {¶ 16} A motion to withdraw a plea, made before sentence has been pronounced, should be freely allowed in the interests of justice. Statev. Peterseim (1980), 68 Ohio App.2d 211. Nevertheless, the review of a denial of even a pre-sentence motion to withdraw a plea is governed by the abuse-of-discretion standard. State v. Xie (1992), 62 Ohio St.3d 521, second paragraph of syllabus.
 {¶ 17} Sulek cites State v. Fish (1995), 104 Ohio App.3d 236, 240, for the proposition that factors to consider in reviewing a decision to deny a pre-sentence motion to withdraw a plea, in addition to whether the prosecution was prejudiced, include: (1) whether the accused [was] represented by highly competent counsel; (2) whether the accused was given a full Crim. R. 11 hearing before entering the plea; (3) whether a full hearing was held on the motion [to withdraw the plea]; (4) whether the trial court gave full and fair consideration to the motion; (5) whether the motion was made within a reasonable time; (6) whether the motion sets out specific reasons for the withdrawal; (7) whether the accused understood the nature of the charges and possible penalties; and (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges.
 {¶ 18} Let us take these factors in order.
(1) The record is silent on the issue of whether Sulek's counsel at the hearing on his motion to withdraw his plea was "highly competent." His counsel at that hearing, Ben Swift, is not unknown to this court, having participated as appellate counsel in numerous appeals to this court. Although we do not hesitate to pronounce that, in our experience, Mr. Swift has exhibited professional competence in his appearances in this court, we will take no position on the issue of whether he should or should not be regarded as "highly competent." That leaves this factor in equipoise.
(2) We have reviewed the Crim. R. 11 colloquy, and it appears to have been painstaking. The practice in Greene County Common Pleas Court is to accept a written petition from the defendant, signed by the defendant, personally, to tender a plea of guilty or no contest, in which the essential requirements of Crim. R. 11 are covered, together with a signed certificate of counsel representing that these matters were explained to the defendant, and that the plea is voluntarily and "understandingly" made. The record reflects that this was done in this case. Furthermore, the trial judge conducted a thorough colloquy with the defendant, personally, reviewing all of the requirements of Crim. R. 11. This factor weighs in favor of the State.
(3) On December 9, 2003, Sulek appeared with his counsel in open court. The State was also represented by counsel. At that time, the trial court made the following statement:
 {¶ 19} "Before the Court goes any further, the Court has before it a motion filed by the Defendant. The Court has received a motion filed by the Defendant to ask that his plea be withdrawn, and since this is prior to the sentencing in this case, the Court will hold a hearing and allow either side to present any evidence or testimony or Exhibits or make any arguments that either Counsel wish to make in regard to the motion filed by the Defendant."
 {¶ 20} Although Sulek's trial counsel at the hearing limited himself to argument in support of the motion, without presenting testimony or other evidence, there is nothing in the record to indicate that the trial court restricted his ability to put before the court any testimony or other evidence in support of the motion. Therefore, we conclude that this factor weighs in favor of the State.
 {¶ 21} (4) The trial court laid out its reasons for denying Sulek's motion, orally, on the record, as follows:
 {¶ 22} "The Court notes that as cited by the State of Ohio, State v.Xie [62 Ohio St.3d 521], is one of the threshold cases by the Ohio Supreme Court which indicates, in part, that generally presentence motions to withdraw a plea should be liberally allowed; however, the Defendant does not have an absolute right to withdraw a guilty plea prior to sentencing, and that there should be some legitimate basis for a withdrawal of a plea before the Court should grant a withdrawal of the plea, and to that I cite State v. Perdue, P-E-R-D-U-E, a Second District Court of Appeals case decided November 21, 2003.
 {¶ 23} "The analysis the Court will engage in is a review of the Criminal Rule 11 colloquy that the Defendant which, in part, the Court has already entered upon the record regarding what the Defendant was facing.
 {¶ 24} "Counsel has pointed out the fact that he pled to multiple counts of which exposure would have been in excess [of] 30 years. As a result of the discussion with the Prosecuting Attorney and the Court, it was determined that after a merger of the counts, which the State conceded would occur, that the maximum exposure was 17 and a half years, and the Court would find that exposure of the Defendant to significantly less time on the plea can hardly prejudice the Defendant in regard to a disposition as long as the Court does not impose a sentence that would be in excess of what was indicated previously on the record.
 {¶ 25} "So the Court further finds that the plea in this case took place one day before the trial in this matter, at which time I'm sure that Counsel for the Defendant and the Defendant had significant amount of time to discuss the matter, their exposure, the risk of going to trial, and the Court noted that it is significant and the Defendant did plea[d] on the eve of trial.
 {¶ 26} "The fact that the Defendant could have had a trial virtually the next business day is an indication to the Court that the Defendant's plea, in conjunction with the Criminal Rule 11 colloquy, was one in which he obviously was aware, not only of his option to go to trial, but knew he could go to trial the very next day, and finds that there's no evidence that the plea was involuntary, was anything other than intelligent and knowing.
 {¶ 27} "And I believe the Court further, on the issue of innocence of the Defendant, addresses that in the plea itself.
 {¶ 28} "The no contest plea is one in which the Defendant is not making an admission to his guilt, but is not contesting the facts which is, I guess, just one step away from basically indicating that he's not admitting his guilt.
 {¶ 29} "So the fact the Defendant now has a change of heart under the cases I've cited are insufficient reason to withdraw a plea absent any legitimate purpose.
 {¶ 30} "The Court specifically finds that the Defendant has presented no new evidence to this Court that would cause the Court to feel that there is a reason that the facts, as presented to the Court on the day of the plea on the 12th of September, 2003, is any different than the facts that are before the Court today.
 {¶ 31} "As a result, the Court finds that the motion to withdraw is not well taken and is overruled."
 {¶ 32} Whether or not we would echo every aspect of the trial court's reasoning as quoted above from the transcript, the trial court obviously gave thorough consideration to Sulek's motion. Thus, we conclude that this factor, also, weighs in favor of the State.
 {¶ 33} (5) The trial court noted that the no-contest plea was tendered and accepted one day before trial, on September 12, 2003. A disposition hearing was set for October 22, 2003, which was later continued to November 5, 2003, and then still later continued to December 9, 2003. The motion to withdraw the plea was filed November 21, 2003, more than 60 days after the plea was first tendered and accepted. The State speculated, at the hearing on the motion to withdraw, that Sulek had become aware of a presentence investigation report, dictated and typed on October 20, 2003, which recommended a lengthy sentence, and that this prompted Sulek's motion to withdraw his plea. The trial court made no finding in this regard, and neither shall we. We do deem it significant, however, that the reason Sulek offered for his motion to withdraw, which we discuss below, should have been apparent to him, if not on September 12, 2003, when his plea was tendered and accepted, at least shortly thereafter, and yet he waited more than sixty days to file his motion to withdraw the plea. We regard this factor as weighing, at least slightly, in favor of the State.
 {¶ 34} (6) The reason Sulek advanced in support of his motion to withdraw his plea is that he had thought, before the plea hearing, that he was exposed to a possible maximum term of incarceration of 37½ years, and had he known that the maximum term was only 17½ years, because of merged offenses, he would have taken his chances at trial. As both the State and the trial court note, the problem with this reasoning is that whatever Sulek may have thought before the plea hearing, it is clear from the record that during the hearing he understood that 17½ years was the maximum incarceration he was facing.
 {¶ 35} The issue of the maximum exposure was brought up in the plea hearing for the first time in the following colloquy:
 {¶ 36} "THE COURT: Okay. Now, it's important for you to understand what the consequences are of entering these pleas, and the consequences include the maximum possible sentences that can be imposed in this case. Do you know what the maximum possible penalty is in the terms of imprisonment that may be imposed in this case?
 {¶ 37} "A. Yes, sir.
 {¶ 38} "THE COURT: What is that?
 {¶ 39} "A. 17 and a half years.
 {¶ 40} "THE COURT: Do you know what the maximum fine is?
 {¶ 41} "A. $35,000, I believe, sir."
 {¶ 42} Later, the trial court asked the prosecutor to explain, for the record, how the maximum possible sentence of 17½ years was arrived at, and the prosecutor recited for the record the mergers of offenses that led to the calculation. Sulek's trial counsel was asked if he agreed with that calculation, and he indicated that he did. There is nothing in the record to indicate that Sulek was confused, at this time, when his plea was about to be tendered for acceptance, about the maximum amount of incarceration he would be facing. Nor did Sulek indicate that this confounded some prior understanding he had had concerning his maximum exposure. There is nothing in the record to indicate that Sulek desired some additional time to consider a changed circumstance posited by a revision in his understanding of the maximum exposure.
 {¶ 43} In making the argument in support of the motion to withdraw the plea, Sulek's trial counsel argued that he and his client had misunderstood the maximum exposure until they arrived at the plea hearing. Sulek's argument then continued as follows:
 {¶ 44} "I think that if, prior to this plea, I could have informed Mr. Sulek regarding the counts merging ahead of time, that we would have had what would merge — if we had known what would merge and what would not merge prior to the plea in this case, he may have — it's a possibility that his opinion would have been different as to whether or not he wanted to plead in this matter with his potential exposure going from 37 and a half to 17 and a half."
 {¶ 45} As the State notes, Sulek did not testify, at the plea hearing, that he likely would not have pled no contest had he known, in advance of the hearing, that his total exposure was limited to 17½ years. All we have is his counsel's speculation that "it's a possibility" that he might not have. Against this speculation is the fact that no effort was made to withdraw the plea for more than sixty days. If Sulek's prior misconception that he would face up to 37½ years imprisonment was the problem that he now says it is, surely he would have sought to undo his plea earlier, even if it can be assumed that he was too intimidated by his surroundings to bring the matter up, even in a side conversation with his counsel, during the plea hearing.
 {¶ 46} In short, like the trial court, we find the reason Sulek advances in support of his motion to withdraw his plea to be unpersuasive. This factor weighs, if at all, in favor of the State.
 {¶ 47} (7) Other than the argument addressed in (6), above, Sulek makes no argument that he misunderstood the charges against him and the penalties he was facing. The record reflects that the trial court was thorough in reviewing both the nature of the charges with Sulek, and the penalties he was facing. This factor weighs in favor of the State.
 {¶ 48} (8) Although Sulek asserted his innocence during the hearing on his motion to withdraw his no-contest plea, this assertion was conclusory:
 {¶ 49} "That's correct, Your Honor. Mr. Sulek asserts his innocence in this matter. He doesn't believe that he committed a criminal offense; thus he didn't admit guilt. He pled no contest, and he would like a jury trial in order to develop what he believed happened in this case, and I think withdrawing the plea prior to sentencing would accommodate him in that regard."
 {¶ 50} In our view, a conclusory assertion of innocence, without any indication of the weaknesses in the State's evidence, exculpatory evidence, or affirmative defenses, is not entitled to much weight in considering whether a motion to withdraw a no-contest plea should have been granted.
 {¶ 51} We conclude that the factors cited by Sulek weigh, collectively, in favor of the State. Accordingly, we find no abuse of discretion in the trial court's decision to deny his motion to withdraw his no-contest plea. Sulek's First Assignment of Error is overruled.
 III {¶ 52} Sulek's Second Assignment of Error is as follows:
 {¶ 53} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH, FOURTEENTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 54} In support of this assignment of error, Sulek contends that his trial counsel was ineffective for having failed to advise him, in advance of the plea hearing that his maximum possible sentence was only 17½ years, not 37½. As Sulek notes, a claim of ineffective assistance of counsel requires not merely that trial counsel's performance fell below an objective standard of reasonableness, but further that the accused was prejudiced as a result. State v. Bradley (1989), 42 Ohio St. 3d 136.
 {¶ 55} Even if we were to assume that trial counsel was deficient for having failed to advise Sulek of the effect of mergers on his maximum exposure, we cannot find, on this record, that Sulek was prejudiced as a result. Although, at the hearing on the motion to withdraw the plea Sulek's counsel speculated that "it's a possibility" that Sulek would not have pled no contest had he known that he faced at most 17½ years of incarceration, there is nothing in the record to support this speculation. The record indicates that by the time of the plea hearing, if not before, Sulek clearly understood that the maximum term of imprisonment he faced was 17½ years.
 {¶ 56} Sulek's Second Assignment of Error is overruled.
 IV {¶ 57} Both of Sulek's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Wolff and Grady, JJ., concur.